John R. SHOEMAKE and Dorothy I. Shoemake, Plaintiffs,

v.

UNITED STATES of America, Defendant.

Civ. A. No. W-1637.

United States District Court
D. Kansas.

June 17, 1959.

McDonald, Tinker, Skaer, Quinn & Porter, Wichita, Kan., and O. J. Connell, Jr., El Dorado, Kan., for plaintiffs.

Wilbur G. Leonard, U. S. Atty., Topeka, Kan., George E. Peabody, Asst. U. S. Atty., Wichita, Kan., and John Murray, Department of Justice, Washington, D. C., for United States.

RITTER, District Judge.

Findings of Fact
and Conclusions of Law

This cause having come on for trial on May 28, 1959, before the Court sitting without a jury, and the Court having heard the evidence and the arguments of counsel renders the following Findings of Fact and Conclusions of Law:

I

Plaintiffs are citizens of the State of Kansas and residents of the District of

Kansas. The defendant is a corporate sovereign.

## II

During and prior to the years involved in this controversy, 1948 through 1955, various landowners in Butler, Cowley, Greenwood, and other adjoining counties executed oil and gas leases upon their respective tracts of land to various lessees. The leases were executed on the customary "Producers 88" or "Producers 88(b)" type of form. All of the lessees paid valuable consideration for their respective leases.

## III

After these lessees had gone upon their leases and drilled wells, they commenced pumping oil from the subsurface oil deposits and sold the marketable crude oil to pipeline companies. A small percentage of the matter brought to the surface by the lessees consisted of oil emulsified with water and other substances, commonly called "tank bottoms" or "tank settlings". It was impossible to bring marketable crude oil to the surface without also obtaining a percentage of these "tank bottoms". These tank bottoms had no market value and were commonly spread upon dirt roads.

## IV

"Tank bottoms" are concentrated at the bottom of the stock tanks used for gathering and temporary storage of the crude oil, preparatory to its sale to the pipeline companies. If these tank bottoms are not removed from the stock tanks periodically, they will tend to contaminate the crude oil causing the pipeline company to reject any further crude oil from that tank until it has been cleared.

## V

Plaintiff, referring to Mr. Shoemake, in the late 1930's constructed an installation near El Dorado, Kansas, for the purpose of obtaining marketable crude oil from tank bottoms. Later, he established a similar installation in Eureka, Kansas.

## VI

Plaintiff's operation is quite simple. Upon receiving a call from one of the lessee's or producing companies operating on a lease that a particular stock tank needs to be cleaned, plaintiff dispatches one or more of his trucks to the stock tank. There, by the use of a suction hose attached from the truck to a valve near the bottom of the tank, plaintiff draws out the tank bottoms into the truck. This process is repeated until the tank is clean. Plaintiff's trucks return to one of his processing plants where the tank bottoms are subjected to heat and chemical treatment. As a result of this treatment, plaintiff reclaims crude oil which he sells to the pipeline company.

## VII

Plaintiff pays nothing to the lessees for the tank bottoms, and the lessees pay plaintiff nothing for cleaning their stock tanks. Plaintiff merely exchanges his cleaning services for the tank bottoms.

## VIII

Plaintiff has no contract or agreement with the lessees other than the nature of the payment for his cleaning services. He has no right to go upon the lease and remove the tank bottoms unless called by the lessee, and the lessees have complete discretion in deciding whether to call plaintiff or one of his competitors for their tank cleaning needs. Some of the lessees clean their own tanks spreading the tank bottoms upon dirt roads to keep down the dust. Plaintiff has no right of entry upon the lease, either exclusive or non-exclusive, until specifically called by the lessee or the producing interest.

## IX

For each of the years 1948 through 1955, plaintiffs, husband and wife, filed joint federal income tax returns with the District Director of Internal Revenue, Wichita, Kansas, on or before the due date. In each of these returns, plaintiffs reported income from the sale of crude oil obtained by plaintiffs from the aforementioned tank bottoms. Also, in each

of these years plaintiffs eliminated from their gross income a 27½ per cent depletion deduction.

## X

Upon an audit and review of these returns, the Commissioner of Internal Revenue disallowed the depletion deductions claimed by plaintiffs and assessed additional taxes against plaintiffs for each of the years 1948 through 1953. These deficiencies, together with interest thereon, were paid as follows:

| | |
|---|---|
| November 21, 1952 | $18,499.86 |
| January 17, 1953 | 42.71 |
| April 15, 1957 | 8,175.14 |
| February 12, 1958 | 4,520.79 |
| Total | $31,238.50 |

## XI

Thereafter, plaintiffs filed timely claims for the refund of said additional taxes for each of the years 1948 through 1953, and these claims were rejected by the Commissioner of Internal Revenue. Plaintiffs then filed this timely suit seeking a refund of the additional taxes, plus interest thereon.

### Conclusions of Law

#### I

The Court has jurisdiction of the parties and the subject matter concerned in this action.

#### II

Plaintiffs have failed to sustain their burden of proving that they had an economic interest in the oil in place upon which they claim depletion. At best, the facts disclose that plaintiffs' only connection with the oil in place was through their working arrangement with the lessees and producing interests, resulting in a mere economic advantage.

#### III

Plaintiffs had no capital investment in the oil in place.

#### IV

Plaintiffs' activity place them in the category of a processor and not in the category of a producer of oil. Their activity amounts to a reclamation of oil from tank settlings found in the bottom of oil storage tanks.

#### V

Plaintiffs have failed to sustain their burden of proving that they are entitled to the deduction for depletion. Further, they have failed to show that they overpaid their taxes for any of the years 1948 through 1953, inclusive, and in so doing, have failed to sustain their burden of proof.

Wherefore it is hereby held that defendant is entitled to a judgment dismissing plaintiffs' complaint, with all costs to be borne by the plaintiffs.